## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHARLENE GREEN, individually and, as Administratrix of the ESTATE OF JULIUS S. JOHNSON, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 21-660-MN-SRF |
| CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., HERMAN M. ELLIS, M.D., DANA METZGER, and MARC RICHMAN, | ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this civil rights case are motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) filed by defendants Dana Metzger ("Metzger") and Marc Richman ("Richman") (collectively, "DOC Defendants") (D.I. 3)[1] and a separate motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by defendant Herman M. Ellis, M.D. ("Dr. Ellis").  (D.I. 5)[2]  For the following reasons, the court recommends:

(1) DENYING DOC Defendants' motion to dismiss for lack of subject matter jurisdiction (D.I. 3);

_____

[1] The briefing for DOC Defendants' pending motion is as follows: opening brief (D.I. 4), answering brief (D.I. 10), and reply brief (D.I. 12).

[2] The briefing for Dr. Ellis' pending motion is as follows: opening brief (D.I. 6), answering brief (D.I. 11), and reply brief (D.I. 13).

(2) GRANTING without prejudice DOC Defendants' motion to dismiss for failure to

state a claim (D.I. 3); and

(3) DENYING without prejudice Dr. Ellis' motion to dismiss to renew when the

bankruptcy stay is lifted (D.I. 5).[3]

## II.   BACKGROUND

### a.   Procedural History

On March 23, 2021, Charlene Green ("Green"), individually and as Administratrix of the

Estate of her son, Julius S. Johnson ("Johnson"), initiated this action in Delaware Superior Court,

C.A. No. K21C-03-034 JJC, against defendants Connections Community Support Programs, Inc.

("CCSP"), Dr. Ellis, Metzger, and Richman.  (D.I. 1, Ex. A)  The complaint asserts claims for

failure to provide necessary medical treatment in violation of the Eighth Amendment and 42

U.S.C. § 1983, and medical negligence resulting in Johnson's death on July 4, 2019, when he

was housed as a pretrial detainee at James T. Vaughn Correctional Center ("JTVCC").  (*Id.*)

DOC Defendants removed the case to this court on May 6, 2021, on the basis of federal

question jurisdiction pursuant to 28 U.S.C. § 1331.  (D.I. 1, Ex. D)  Defendant CCSP filed for

Chapter 11 bankruptcy on April 19, 2021 and filed a Suggestion of Bankruptcy in Delaware

Superior Court on April 28, 2021.  (D.I. 1, Ex. C)  Defendant CCSP filed a Suggestion of

Bankruptcy in this court on July 30, 2021, invoking the automatic stay under the Bankruptcy

Code 11 U.S.C. § 362(a).  (D.I. 21)[4]

---

[3] A Memorandum Order granting Plaintiff's motion to stay the case against Defendants CCSP
and Dr. Ellis is filed concurrently with this Report and Recommendation.
[4] Subsequent to filing its Suggestion of Bankruptcy, CCSP's bankruptcy converted from Chapter
11 to Chapter 7 on September 27, 2021.  (*See* 21-10723-MFW, Bankr. Docket No. 537)

On May 12, 2021, DOC Defendants filed their motion to dismiss and opening brief. (D.I. 3; D.I. 4)  The motion was referred for a Report and Recommendation to the undersigned judicial officer on May 13, 2021. (D.I. 8)

### b.  The Parties

Johnson was a pre-trial detainee facing criminal charges related to a shooting that rendered him paralyzed due to a fracture of his sixth cervical vertebrae. (D.I. 1, Ex. A at ¶¶ 1, 3)  He died in custody while housed in JTVCC's infirmary. (Id. at ¶¶ 11-14)  Green, Johnson's mother, was appointed Administratrix of Johnson's Estate on September 20, 2019. (*Id.* at ¶ 2)  Green initiated this action individually and as Administratrix of Johnson's Estate. (*Id.* at ¶¶ 35-37)

At all times relevant to the complaint, Metzger was an employee of the Delaware Department of Corrections ("DDOC") and served as JTVCC Warden, and Richman served as Delaware Bureau Chief of Correctional Healthcare Services. (*Id.* at ¶ 19)  Green alleges Metzger and Richman are liable in their individual capacities for their constitutional violations and seeks, *inter alia*, compensatory and punitive damages, funeral expenses, and attorney's fees pursuant to 42 U.S.C. § 1988. (*Id.* at ¶¶ 19, 36-37)

CCSP was a subcontractor of JTVCC and the medical care provider to inmates in DDOC level 4 and 5 prisons. (*Id.* at ¶¶ 1,17)  Dr. Ellis is a board certified physician in Public Health and General Preventative Medicine and was employed by CCSP at all times relevant to the asserted claims. (*Id.* at ¶¶ 18, 23)

### c.  Facts[5]

---

[5] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the instant motion to dismiss. *See Umland v. Planco Fin. Servs.*, 542

On June 1, 2019, Johnson was shot in the shoulder at a barbershop in Dover, Delaware. (*Id*. at ¶ 3)  Johnson was transported to Bayhealth Medical Center ("Bayhealth") where examinations revealed that the bullet fractured his sixth cervical vertebrae and rendered him paraplegic.  (*Id*. at ¶¶ 1, 3)  While at Bayhealth, the neurological team started Johnson on anticoagulation medication to prevent blood clots and antibiotics to treat possible hospital-acquired pneumonia.  (*Id*. at ¶ 3b-c)  On June 4, 2019, an occupational therapist recommended discharging Johnson to a specialized spinal cord injury rehabilitation facility.  (*Id*. at ¶ 3a)  On June 11, 2019, a referral was faxed to Moss Rehabilitation in Philadelphia.  (*Id*. at ¶ 3d) Bayhealth also recommended three months of anticoagulation therapy and more long-term management if Johnson's mobility continued to be significantly impaired, but reserved for the prison further decision for any long-term treatment.  (*Id*. at ¶ 3f)

On June 12, 2019, Johnson was charged with offenses arising from the barbershop incident but was unable to post secured bail.  (*Id*. at ¶¶ 3e, 3n)  On June 18, 2019, a social worker noted that "Megan from neurosurgery will be coordinating with the Warden in regard to rehab out of state" and that the "discharge recommendation still remained Specialized Spinal Cord Injury Rehab."  (*Id*. at ¶ 3i)  However, on June 20, 2019, Moss Rehabilitation informed the social worker that it would not accept Johnson as a patient because he was under arrest.  (*Id*. at ¶ 3j)  A physician's assistant also noted that "2 of 3 Acute Rehab facilities would not accept [Johnson] due to the need for guards if [Johnson] is not able to post bail."  (*Id*. at ¶ 3h)  On June 25, 2019, a Bayhealth nurse practitioner left a message for Matt Wofford, the Health Administrative Supervisor at JTVCC, to initiate Johnson's transfer to JTVCC.  (*Id*. at ¶ 3l)

---

F.3d 59, 64 (3d Cir. 2008).  Citations to D.I. 1, Ex. A in this section refer to the complaint, which was attached as an exhibit to the notice of removal.  (D.I. 1-1)

On June 26, 2019, the Charge Nurse at JTVCC informed a Bayhealth registered nurse that she would speak with her boss and medical personnel to obtain clearance for Johnson's transfer to JTVCC. (*Id*. at ¶ 3m)  That same day, Johnson was deemed medically stable for discharge and was placed in DOC custody as a pretrial detainee. (*Id*. at ¶ 3m-n)  The occupational therapist noted that Johnson was dependent on a Hoyer lift to get from the bed to a chair and that he should remain in occupational therapy. (*Id*. at ¶ 3m)  Although Bayhealth's medical staff believed Johnson should have been discharged to a specialized spinal rehab facility, DOC and CCSP maintained that Johnson could be cared for in the JTVCC infirmary. (*Id*. at ¶ 3n)  A wound care registered nurse noted that, upon transfer, Johnson would need "around the clock 2-hour turn/positioning, complete dependence for incontinence care, manual treatment for neurogenic bowel, and a pressure redistribution support surface." (*Id*. at ¶ 3k)

On June 26, 2019, Johnson arrived at the JTVCC infirmary. (*Id*. at ¶ 4)  A registered nurse noted that Johnson was bed bound, was required to wear an Aspen collar for six weeks, and needed wound care to his sacrum and right posterior Achilles area. (*Id*.)  While at the JTVCC infirmary from June 26, 2019 to July 4, 2019, JTVCC medical staff cleansed Johnson's wounds with normal saline daily, but the wounds continued to have a foul odor. (*Id*. at ¶¶ 4-11)  Medical staff took a culture of Johnson's wound on June 27, 2019, and Dr. Ellis suggested using Santyl, a collagenase compound to dissolve dead skin tissue, which was not immediately available. (*Id*. at ¶¶ 4-11)  On July 2, 2019, medical staff ordered Santyl, which arrived and was used for the first time on July 3, 2019. (*Id*. at ¶¶ 9d, 10b)

Additionally, medical staff monitored and recorded Johnson's vital signs an average of four times a day, routinely repositioned him, administered Tylenol to treat fluctuations in temperature, and noted that his lungs sounded clear. (*Id*. at ¶¶ 4-11)  Medical staff ordered x-

rays of Johnson's sacrum and coccyx on June 27 and June 28, 2019, that were performed on July 1, 2019. (*Id.* at ¶¶ 4c, 5b, 8c)  On June 30, 2019, medical staff assisted Johnson after he fell from his bed. (*Id.* at ¶ 7a)  On July 1, 2019, medical staff noted that Johnson complained of pain and tingling in his right hand. (*Id.* at ¶ 8b)  On July 2, 2019, medical staff observed Johnson showing signs of seizure while sitting up in bed, but Johnson denied experiencing any seizures. (*Id.* at ¶ 9)  Dr. Ellis administered two rounds of antibiotics to Johnson on July 3, 2019, after noting that the sacral wound was infected. (*Id.* at ¶ 10d)

On July 4, 2019, medical staff administered two rounds of antibiotics and noted that Johnson did not have a fever and was not exhibiting signs of acute medical distress. (*Id.* at ¶ 11)  However, at 4:25 PM, a correctional officer found Johnson unresponsive in his wheelchair and notified medical staff, who administered CPR and a shock from an automated external defibrillator until paramedics arrived to transport Johnson to Bayhealth. (*Id.* at ¶ 11e)  Paramedics and Bayhealth physicians continued life-saving measures until Johnson was pronounced deceased at 10:59 PM. (*Id.* at ¶ 14e)  Physicians at Bayhealth noted that Johnson suffered from cardiac arrest, septic shock, and organ damage. (*Id.* at ¶ 14)  Johnson's autopsy report included findings of septic shock, cardiac arrest, bilateral pulmonary infiltrates, and bilateral pneumonia with congestion and edema. (*Id.* at ¶ 15)

## III.   LEGAL STANDARDS

### a.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring its claim. *See Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) ("[a] motion to dismiss for want of standing is…properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter").

Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *See Lincoln Ben. Life. Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *See also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

**b.      Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal

7

evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### a. DOC Defendants' 12(b)(1) Motion to Dismiss

DOC Defendants argue that the court lacks subject matter jurisdiction over Green's wrongful death claim because Green does not have standing to bring the claim as an individual under 10 *Del. C.* § 3701 and did not properly allege a wrongful death claim under 10 *Del. C.* § 3724. (D.I. 4 at 6-7) Specifically, DOC Defendants assert that Green is not an executor or administrator of Johnson's estate and is thus precluded under 10 *Del. C.* § 3701 from filing a lawsuit as an individual. (*Id.* at 6) DOC Defendants also assert that Green is precluded from now bringing a wrongful death claim under 10 *Del. C.* § 3724 because she did not refer to the wrongful death statute or the words "wrongful death" in the complaint. (*Id.* at 6-7; D.I. 12 at 6-7) DOC Defendants maintain that Green is precluded from seeking damages for funeral expenses under Section 3701 because damages may only be recovered for a decedent's pain and suffering, medical expenses, and loss of earnings from the decedent's time of injury up to his death. (D.I. 4 at 6)

In response, Green argues that she has standing under 10 *Del. C.* § 3701 to bring a survival action because she was appointed Administratrix of Johnson's Estate on September 20, 2019. (D.I. 10 at 1, 7) Moreover, Green asserts that she properly alleged a wrongful death action under 10 *Del. C.* § 3724 in Count II of the complaint and that the damages she claims, including the funeral expenses, are recoverable under 10 *Del. C.* § 3724(d)(3)-(4). (*Id.*)

8

In *Robertson*, the United States Supreme Court ruled that although federal law does not provide for "the survival of civil rights actions under § 1983 upon death of [either party]," state statutes governing the survival of state actions may fill the gap via 42 U.S.C. § 1988, subject to the important proviso that state law may not be applied when it is "inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 589 (1991) (*citing Moor v. Alameda County*, 411 U.S. 693, 702 n.14 (1973); *citing also* 42 U.S.C. § 1988(a)). Therefore, if such a state survival statute exists, the death of a claimant alleging a civil rights violation may give rise to a federally enforceable claim for damages on behalf of the claimant, his survivors, or both. Delaware's Survival and Wrongful Death statutes prevent abatement of claims arising under federal law for alleged civil rights violations. *Congo v. Free*, 2005 WL 1384849, at *1-2 (D. Del. June 8, 2005) (holding that Delaware's Survival statute allows the personal representative of the deceased to be "substituted as plaintiff and to prosecute the [42 U.S.C. § 1983] suit to final judgment"); *See* 10 *Del. C.* § 3701 ("All causes of action…shall survive to…the executors or administrators of the person to, or against whom, the cause of action accrued"); *See also* 10 *Del. C.* § 3724(a) ("[a]n action under this subchapter shall be for the benefit of the spouse, parent, child, and siblings of the deceased person").

However, *Robertson* and *Congo* did not involve the circumstances present in the instant case where the death allegedly resulted from the constitutional deprivation. While indicating it was expressing no view "about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death," the Supreme Court referred to *Brazier*, wherein the Fifth Circuit ruled that a surviving widow had viable claims individually and as personal representative of the estate of the claimant who was allegedly fatally attacked by

arresting officers while in police custody. *Robertson*, 436 U.S. at 594; *See Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961). The Fifth Circuit's rationale, applicable here, is as follows:

> Since Georgia now provides both for survival of the claim which the decedent had for damages sustained during his lifetime as well as a right of recovery to his surviving widow and others for homicide, see note 15, supra, we need not differentiate between the two types of actions. See 16 Am.Jur., Death § 61 at 47-48. To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims. Section 1988 declares that this need may be fulfilled if state law is available. Georgia has supplied the law.

*Id.* at 409.

Here, the DOC Defendants' challenge to Green's standing to assert claims individually and as Administratrix of Johnson's Estate fails to account for Delaware's Survival and Wrongful Death statutes which prevent abatement of Green's claims arising under federal law for alleged civil rights violations. *See* 10 *Del. C.* § 3701; *See also* 10 *Del. C.* § 3724. Count I of the Complaint asserts claims on behalf of Johnson for deliberate indifference to his medical needs while in the custody of JTVCC. (D.I. 1, Ex. A at ¶¶ 35-36) Although his death ends the damages period for such claims, it does not preclude his personal representative from pursuing a cause of action because the survival statute, 10 *Del. C.* § 3701, fills the gap under federal law in providing a remedy notwithstanding the death of the claimant. Green was appointed Administratrix of Johnson's Estate and, in accordance with 10 *Del. C.* § 3701, she may file a survival action. (D.I. 1, Ex. A at ¶ 2).[6]

Similarly, the Wrongful Death statute, 10 *Del. C.* § 3724, assures a remedy for the claims of the surviving relative of the decedent asserted in Count II arising from the same alleged

---

[6] Green inserts a vague, conclusory reference to criminally negligent homicide at ¶ 34 of the complaint. (D.I. 1, Ex. A at ¶ 34) To the extent Green is attempting to craft such a cause of action against any of the Defendants, it is precluded under 10 *Del. C.* § 3701 as a cause of action upon a penal statute that does not survive the death of the decedent. *See* 10 *Del. C.* § 3701.

constitutional violations that resulted in his death.  (D.I. 1, Ex. A at ¶ 37)  The fact that each

Count does not expressly mention the Survival and Wrongful Death statutes is not fatal to their

viability.  They plausibly allege plaintiff's standing to bring such claims, and to dismiss them for

lack of proper labeling would exalt form over substance.[7]  Thus, under 10 *Del. C.* § 3724, Green

may seek "[r]easonable funeral expenses not to exceed $7,000, or the amount designated in §

5546(a) of Title 29, whichever is greater" and damages for "[m]ental anguish resulting from such

death to the...next-of-kin of such deceased person."  10 *Del. C.* § 3724(d)(4)-(5); (*See* D.I. 1, Ex.

A at ¶ 37)

 Therefore, the court recommends denying DOC Defendants' motion to dismiss Green's

claims on jurisdictional grounds for lack of standing.

### b. DOC Defendants' 12(b)(6) Motion to Dismiss

 The Eighth Amendment proscription against cruel and unusual punishment requires that

prison officials provide inmates with adequate medical care.  *See Estelle v. Gamble*, 429 U.S. 97,

103-05 (1976).  To successfully plead a claim under 42 U.S.C. § 1983 for an Eighth Amendment

medical care violation, a plaintiff must plausibly allege "(1) a serious medical need and (2) acts

or omissions by prison officials that indicate deliberate indifference to that need." *Parkell v.*

*Pierce*, C.A. No. 17-157-LPS, 2018 WL 3104406, at *5 (D. Del. June 22, 2018) (citing *Estelle*,

429 U.S. at 103-05; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d. Cir. 1999)).  A prison official is

deliberately indifferent if the official knows that a prisoner faces a substantial risk of serious

---

[7] The court notes that Green similarly did not refer to Count I as a "survival action" or cite to 10 *Del. C.* § 3701, yet DOC Defendants understood Count I to refer to a survival action. Presumably, this is because Green noted "Plaintiff Charlene Green, *as Administratrix of the Estate of Julius S. Johnson*, demands judgment..." (D.I. 1, Ex. A at ¶ 36, emphasis added) Likewise, Count II of the complaint alleges a wrongful death action as noted by Green's phrasing "*Charlene Green*, his mother, *has suffered* the following injuries..." (*Id.* at ¶ 37, emphasis added)

harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The complaint must contain specific allegations of deliberate indifference as to each individual defendant and must not impermissibly assert claims against defendants jointly. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (to successfully plead a civil rights violation, a plaintiff must plausibly allege each defendant's "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*"). A plaintiff can plead a defendant's personal involvement "through allegations of personal direction or of actual knowledge and acquiescence." *Id.* However, a defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted).

The parties do not dispute that Johnson had a serious medical need. On June 1, 2019, Johnson's gunshot wound rendered him paraplegic. (D.I. 1, Ex. A at ¶ 3) While a pretrial detainee, he had multiple unstageable pressure wounds on his right buttocks and sacrum which became infected and required antibiotics, a culture, and x-rays. (*Id.* at ¶¶ 3n, 3g, 4-11); *See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (noting that a medical need is "serious" if it was "diagnosed by a physician as requiring treatment").

The focus of the parties' dispute is whether Metzger and Richman acted with deliberate indifference to Johnson's serious medical need by knowingly allowing him to be placed in the JTVCC infirmary instead of a specialized spinal cord injury rehab facility. (D.I. 10 at 7-9; D.I. 4 at 8-14; D.I. 12 at 4-6) DOC Defendants assert that the complaint fails to allege Metzger and Richman's approval or personal involvement in transferring Johnson to the JTVCC infirmary or their knowledge that CCSP or its employees were mistreating or not treating Johnson. (D.I. 4 at

8-14; D.I. 12 at 4-6)  DOC Defendants argue that the complaint only mentions Metzger's position as JTVCC Warden, Richman's position as Delaware Bureau Chief of Correctional Healthcare Services, an overview of their alleged duties, and conclusory statements alleging DOC Defendants' knowledge that the medical care at JTVCC infirmary was "substandard" and inadequate to treat Johnson.  (D.I. 4 at 8-14; D.I. 12 at 3; D.I. 1, Ex. A ¶¶ 31-33)  Moreover, DOC Defendants argue that the complaint fails to allege that Metzger and Richman participated in trying to find an out-of-state rehab facility.  (D.I. 12 at 3-4)  For example, DOC Defendants note that the claim in the complaint that the Warden will be coordinating a transfer to an out-of-state rehab facility fails to mention Metzger by name and does not allege that a conversation ever occurred. (D.I. 12 at 3-4; *See* D.I. 1, Ex. A at ¶ 3i)

Finally, DOC Defendants argue that the complaint devotes itself to explaining the medical care provided to Johnson at JTVCC.  (D.I. 12 at 4-5)  DOC Defendants argue that as non-medical prison officials, they were entitled to rely on the professional judgment of medical staff.  (*Id.* at 6)  DOC Defendants also assert that disagreements as to the proper medical treatment are insufficient to state a constitutional violation.  (*Id.*)

In response, Green argues that she pled specific facts to support her civil rights claim. (D.I. 10 at 1, 7-9)  Green contends that DOC Defendants were obligated to provide medical care to Johnson as a pretrial detainee and, instead of exercising their authority to improve the quality of care provided by CCSP, DOC Defendants allowed CCSP to continue to operate in a substandard manner knowing it could lead to inmates suffering preventable permanent injury and death.  (*Id.*)  Green asserts that Richman was obligated by law to establish reasonable preventative, diagnostic, and therapeutic measures according to the standards promulgated by the DOC.  (*Id.* at 7-9)  Green also asserts that Metzger was the legal custodian of all inmates and was

13

responsible for their safe, secure, and humane housing. (*Id.*) Thus, Green contends that DOC Defendants' decision to send Johnson to the JTVCC infirmary instead of a specialized spinal cord injury rehab facility showed deliberate indifference for his welfare. (*Id.*)

"[A] non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference . . . absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "If a prisoner is under the care of medical experts . . . a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* "This follows naturally from the division of labor within a prison." *Id.* "Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on." *Id.* Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain the division of labor. *Id.* Thus, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Id.* at 235.

Here, Green impermissibly asserts claims against Metzger and Richman jointly and fails to plausibly plead any substantive facts that each of the DOC Defendants individually acted with deliberate indifference by knowingly allowing Johnson to be placed in the JTVCC infirmary instead of a specialized spinal cord injury rehab facility.[8] Without more, a deliberate indifference claim asserting liability based on defendants' supervisory titles and purported duties

---

[8] Green raises additional allegations in her reply brief that are not included in the complaint. (*See* D.I. 10 at 1-3; *See also* D.I. 12 at 1-3)  The court will not consider these additional allegations in deciding the motion to dismiss. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (noting that the complaint may not be amended by the briefs in opposition to a motion to dismiss); *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings").

cannot survive. *See Thorpe v. Little*, 804 F. Supp. 2d 174, 184-85 (D. Del. 2011) (dismissing conclusory claims against prison officials where claim alleged deliberate indifference liability based solely on supervisory roles).  Nor can a deliberate indifference claim be saved by conclusory allegations that nonmedical DOC Defendants had knowledge that the medical care at the JTVCC infirmary was "substandard" without pointing to DOC Defendants' personal involvement in any decision-making as to Johnson's care. *See Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 213-14 (3d Cir. 2017) (affirming dismissal of deliberate indifference claims against nonmedical prison officials where they "deferred to the judgment of medical personnel"); *see also Hairston v. Miller*, 646 F. App'x 184, 187-88 (3d Cir. 2016) (dismissing inmate's claims where he received continual medical care for back pain and the correctional defendant-administrator's involvement was only administrative).  Therefore, the court recommends granting DOC Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

## V.     CONCLUSION

For the foregoing reasons, the court recommends the following actions on the pending motions:

(1) DENYING DOC Defendants' motion to dismiss for lack of subject matter jurisdiction (D.I. 3);

(2) GRANTING without prejudice DOC Defendants' motion to dismiss for failure to state a claim upon which relief can be granted (D.I. 3); and

(3) DENYING without prejudice Dr. Ellis' motion to dismiss to renew when the bankruptcy stay is lifted.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  November 23, 2021

Sherry R. Fallon
United States Magistrate Judge